**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

KENNETH WOLF, an individual,

     Plaintiff,

v.

JOHN DOE, whose true name is unknown.

     Defendant.

---

**VERIFIED COMPLAINT**

---

The Plaintiff, Kenneth Wolf, based on his personal knowledge, experiences, and beliefs; digital evidence obtained from third parties; and his attorneys' investigations, hereby alleges the following causes of action against the Defendant:

**NATURE OF ACTION**

1.     This is an action for the Defendant's violations of the Lanham Act, and common law defamation per se of a private person involving a matter of private concern.

2.     Beginning in July 2019, the Defendant, an unidentified individual, published a website, https://kenwolfdenverdeveloperexamined.com, about Mr. Wolf. The Website falsely alleged Mr. Wolf, a real estate developer, has engaged in unlawful and unethical business practices targeting Colorado consumers.

3.      In the Website posts, the Defendant states the site was established specifically to "examine the actions and dealings of Denver developer Ken Wolf" and that its purpose is to "warn" consumers away from doing business with Mr. Wolf.

4.      The Website is prominent in the search results from major Internet search engines.

5.      It is the top-ranked search result for Google searches of "Ken Wolf Denver."

## PARTIES

6.      Mr. Wolf lived or worked in Denver County, Colorado, when the events described occurred, and still lives or works there.

7.      Mr. Wolf does not know the identity or citizenship information for the Defendant. If the Court permits the initial discovery the Plaintiffs request contemporaneously with this action's commencement, Mr. Wolf will determine the Defendant's name and other identifying information and amend this Complaint.

8.      On information and belief, however, the Defendant is a business competitor of Mr. Wolf's who lives and works in Denver County, Colorado.

## JURISDICTION, AND VENUE

9.      Mr. Wolf asserts claims that arise under  15 U.S.C. § 1125(a)(1)(B) of the Lanham Act and Colorado's common law for defamation per se of a private person involving a matter of private concern.

10.      This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

11.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over claims

not based on federal statutes, since the claims are so related to the other claims within this

Court's original jurisdiction they form part of the same case or controversy.

12.     Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) because the events or

omissions giving rise to the claims occurred in Denver, Colorado, within this Court's

judicial district.

## General Allegations

13.     Upon information and belief, the Defendant is one of Mr. Wolf's commercial

competitors in the real estate development industry or someone who wants to harm Mr.

Wolf's commercial reputation in the community by deceiving consumers and companies

who have considered or will consider doing business with Mr. Wolf.

14.     Mr. Wolf is a real estate developer and small business owner with long-standing

ties to the Denver area.

15.     Mr. Wolf has been in business in Colorado for nearly thirty years.

16.     Although he had established a respectable reputation in the community, the

Website's publication has decreased the reasonable economic values of Mr. Wolf's

personal reputation, brand, or goodwill assets.

## The Website Targeting Mr. Wolf

17.     The Defendant launched https://kenwolfdenverdeveloperexamined.com in the

summer of 2019.

18.     Preliminary investigations did not identify who registered the Website or who

created it.

19.     The Defendant, wanting to hide his identity and avoid being held responsible for

his deceptive business conduct, did not use his real name when he registered the Website.

20.     The Website was published using WordPress software.

21.     The Website domain address is registered through GoDaddy.com.

22.     The Website was first created on July 10, 2019.

23.     The first post on the Website was published on July 10, 2019 and is reproduced

below. A complete copy of the July post is attached as **Exhibit 1**.

We've just launched this website and intend to examine the actions, activities and dealings of Denver developer Ken Wolf. There's more to his maneuverings than meets the eye.

We will shine a light into his practices, relationships and strategies to really expose what this buy is all about. There's quite an ego at work, in our opinion, and we think anyone considering doing business with this man should be very wary.

The coming posts and information we'll bring to light will detail why we have made this kind of determination. Stand by.



*Ken Wolf, Denver Developer*

24.     The July post warned that "anyone considering doing business with this man

should be very wary."

25.     The Website headings include the statements "Ken Wolf: No Good for Denver!"

26.     A second post was published on the Website on September 26, 2019, with the title "Ken Wolf, Denver Developer, Shady, Sneaky Deal-Breaker." A copy of the September post is attached as **Exhibit 2**.

27.     According to the September post, Mr. Wolf "wants what he wants and will make whatever underhanded play he needs to make...It's all the same to him; it's just about money and profiting from something."

28.     The September post alleged Mr. Wolf is a "Wolf in sheep's clothing—trying to appear to the public as a kindly savior of declining properties, but that's really just a ruse he uses to hide his true nature, in our opinion."

29.     The September post further alleged that Mr. Wolf has misrepresented assets and holdings: "His partnerships and legal responsibilities don't appear to be worth the paper they are written on."

30.     Like the July post, the September post cautioned readers about doing business with Mr. Wolf: "You've been warned."

31.     Overall, the July and September posts and the Website, through their statements and omissions, created the false and misleading impression that Mr. Wolf has engaged in deceptive, unethical, and unlawful business practices in connection with real estate development in Denver.

32.     In creating the Website and its posts, the Defendant intentionally misled and deceived Colorado consumers and Mr. Wolf's actual and potential business relations by pretending to be a neutral watchdog when the Defendant is a biased competitor.

33.     The Defendant intended to influence prospective clients and professional colleagues and dissuade them from doing business with Mr. Wolf.

34.     When the Defendant published the Website and the posts about Mr. Wolf, the Defendant did so:

    i.    to help the Defendant compete against Mr. Wolf in the same markets where the Defendant markets and sells the same or similar professional services; or

    ii.    to help the Defendant increase the Defendant's sales for professional services he markets and sells that are like or the same as professional services Mr. Wolf markets and sells in the same market; or

    iii.    to decrease the amount of professional services Mr. Wolf markets and sells in the same markets where the Defendant markets and sells the same or similar professional services; or

    iv.    to decrease the influence Mr. Wolf's marketing efforts will have on the decisions of actual or potential consumers in the same markets where the Defendant and Mr. Wolf market and sell the same or similar professional services; or

    v.      to increase the likelihood that consumers searching for individuals or entities who provide the professional services the Defendant and Mr. Wolf provide would buy those services from the Defendant instead of Mr. Wolf; or

    vi.    to obtain a larger share of the markets in which the Defendant competes against Mr. Wolf for the professional services the Defendant and Mr. Wolf market and sell to those markets; or

    vii.   to decrease Mr. Wolf's share of the markets for the professional services the Defendant and Mr. Wolf market and sell the same or similar professional services; or

    viii.  to indirectly market and promote the Defendant's professional services in markets for which Mr. Wolf is one of his competitors using a marketing technique known as knocking copy[1].

35.    At least one of Mr. Wolf's prospective clients or consumers has seen the Website and decided not to do business with him as a result.

36.    Some of Mr. Wolf's actual customers and clients have seen the Website and expressed their concerns about the disparaging statements the Website makes.

---

[1] 'Knocking copy' is "advertising or publicity material designed to denigrate a competing product." *Knocking Copy*, DICTIONARY.COM, http://www.dictionary.com/browse/knocking-copy (last visited Mar. 5, 2020).

## FIRST CLAIM FOR RELIEF

## Violation of 15 U.S.C. § 1125(a)(1)(B) of the Lanham Act

37.     Mr. Wolf is a 'person' within the meaning of 15 U.S.C. § 1117 because he is

capable of suing and being sued in a court of law.

38.     The Defendant is a 'person' within the meaning of 15 U.S.C. § 1117 because the

Defendant is a natural person.

39.     The Defendant and Mr. Wolf are commercial competitors who compete for clients

in the same market in Colorado and the United States.

40.     The Defendant, through his Website, made false and misleading representations of

fact about Mr. Wolf.

41.     The statements were made in connection with the Defendant's commercial

advertising or promotion activities in commerce.

42.     The Website's statements or writings were published on behalf of a business or

business professional to

     i.    earn revenue or a profit; or

    ii.    prevent another business or business professional from earning revenue or a

         profit; or

   iii.    to persuade consumers to refrain from purchasing another business's or

         business professional's product or service.

43.     The Defendant published the Website and its statements to persuade Colorado and United States consumers who would consider doing business with Mr. Wolf to use competitors' services instead.

44.     The Website's statements about Mr. Wolf misrepresent the nature of Mr. Wolf's services and commercial activities.

45.     The Website has attracted a significant number of Mr. Wolf's and the Defendant's actual and prospective clients and colleagues.

46.     In the real estate development industry, potential customers and colleagues often collect information from Internet searches before deciding about whether to enter into business with a particular person or business.

47.     Mr. Wolf's potential clients and colleagues routinely collect information from Internet searches before entering into business deals with him.

48.     The opinions of Mr. Wolf's colleagues are of particular importance to his business because Mr. Wolf's colleagues regularly share information on prospective business relationships and opportunities with him.

49.     Community opinions of Mr. Wolf are also important to his business because word-of-mouth referrals are a significant source of new business.

50.     The relevant purchasing public concerning real estate development consists not only of individuals selling real property but also of those who drive or refer development opportunities to Mr. Wolf.

51.     The relevant purchasing public or consumer market includes Colorado residents

who live in proximity to properties that are or could be listed for sale; other real estate

developers and industry professionals; individuals and businesses who have listed or will

list properties; and past and prospective clients and colleagues.

52.     The Website has been widely disseminated to the relevant consumer market.

53.     People have informed Mr. Wolf they found and have read the Website.

54.     The Website's false and misleading statements about Mr. Wolf have injured him

and are likely to injure him in the future.

55.     As a direct and proximate result of the Defendant's violations of Section

43(a)(1)(B) of the Lanham Act, Mr. Wolf suffered and will continue to suffer injuries to

his reputation, injuries to his brand value or goodwill assets, and other economic and

noneconomic injuries.

56.     The economic injuries include, but are not limited to, a decreased return on

investment for Mr. Wolf's marketing costs, lost profits, and inconveniences.

57.     Mr. Wolf also suffered and will continue to suffer mental harms, quality-of-life

losses, and harms to his reputation among reasonable people in his community.

## SECOND CLAIM FOR RELIEF

### Defamation per se in a private matter involving a private figure

58.     The Website published about Mr. Wolf, including its July and September posts, is

not newsworthy, does not pertain to the actions or duties of a public entity or public

employee, and does not pertain to a matter of widespread public concern.

59.     The Website concerns a private matter between parties who are business

competitors.

60.     Statements the Defendant caused to be published via the Website harmed or

tended to harm Mr. Wolf's reputation by lowering Mr. Wolf in the estimation of his

reasonable friends, peers, and prospective clients in Colorado and the United States.

61.     The Defendant intended for people who would read the Website to understand

that it was about Mr. Wolf.

62.     The Defendant intentionally used key words and tags to increase the visibility of

the Website and its popularity in search engine search results.

63.     Mr. Wolf's actual and prospective business relations saw the Website.

64.     Mr. Wolf's actual and prospective business relations understood the Website was

about Mr. Wolf and understood its defamatory meaning.

65.     The Website falsely accused Mr. Wolf of engaging in deceptive and unethical

business practices, including unlawful practices.

66.     The Website called into question Mr. Wolf's professional conduct and

competence.

67.     As a direct and proximate result of the Defendant's publication of the Website,

Mr. Wolf suffered and will continue to suffer economic injuries, such as inconveniences,

costs to investigate the reasons why the Website was published and who published it,

costs to mitigate harms to his reputation online, and the decreased values of his personal

reputation, brands, and goodwill assets.

68.     Mr. Wolf also suffered and will continue to suffer mental harms, quality-of-life

losses, and harms to his reputation among reasonable people in his community.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Wolf prays for the following relief:

a.  a court order requiring the Defendant to pay Mr. Wolf for all damages and

losses he sustained as a direct result of the Defendant's unlawful conduct;

b.  a court order requiring the Defendant to pay Mr. Wolf an amount equal to

treble all damages and losses he sustained as a direct result of the

Defendant's unlawful conduct;

c.  a court order requiring the Defendant to pay exemplary or punitive damages

in an amount that will punish the Defendant and deter others from engaging

in similar unlawful conduct;

d.  a court order requiring the Defendant to pay all reasonable and allowable costs incurred for this action;

e.  a court order requiring the Defendant to pay for Mr. Wolf's reasonable and allowable attorneys' fees incurred in this action;

f.  a court order requiring the Defendant to disgorge himself of and pay to Mr. Wolf all profits the Defendant obtained as a direct result of publishing the Website's contents;

g.  a court order requiring the Defendant to permanently delete the Website;

h.  a court order requiring the Defendant to transfer ownership of the Website's domain to Mr. Wolf; and

i.  a court order requiring the Defendant to pay all prejudgment and post-judgment interest the law authorizes.

Dated March 9, 2020

*s/ Edward C. Hopkins Jr.*
Edward C. Hopkins Jr.
*s/ Alexandra Tracy-Ramirez*
Alexandra Tracy-Ramirez
HopkinsWay PLLC
7900 E. Union Ave., Ste. 1100
Denver, CO 80237
(720) 262-5545 tel
(720) 262-5546 fax
Email: ehopkins@hopkinsway.com
Email: atracyramirez@hopkinsway.com
*Attorneys for Mr. Wolf*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

Kenneth Wolf, an individual,

      Plaintiff,

v.

JOHN DOE, whose true name is unknown.

      Defendant.

---

## VERIFICATION

---

I, Kenneth Wolf, affirm and state the following. The facts in the foregoing Verified Complaint are based on my personal knowledge, experiences, and beliefs; digital evidence obtained from third parties; and my attorneys' investigations. The facts are true and correct to the best of my knowledge and belief.

Dated March 9, 2020.

_____
Kenneth Wolf

14